UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EVELYN J. VELEZ, | ) | Case No. 1:09 CV 0715 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Evelyn J. Velez filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of disability insurance benefits and supplemental security income. At issue is the ALJ's decision denying these benefits and dated August 27, 2008, which stands as the final decision of the Commissioner (Tr. 11-18); and see 20 C.F.R. §404.981, §416.981. Velez challenges this denial contending that she is disabled primarily due to inability to handle stress and she relies on the medical opinions from a treating source, Dr. Huerta, and other medical evidence of record which she argues supports her claim for benefits. This dispute has been referred for report and recommended disposition. For the reasons that follow, it is recommended that the Court affirm the administrative denial of benefits.

Velez was 46 years of age at the time of the administrative decision and has a GED education. Her past relevant work experience has been as an industrial cleaner and food packager

2

(Tr. 54-55). The ALJ found that Velez has not engaged in substantial gainful activity since October 1, 2004, the date she quit her job and claims the onset of disability (Tr. 139), and that Velez suffers from severe impairments of major depression, a history of bilateral carpal tunnel syndrome and degenerative disc disease of the cervical spine. (Tr. 13). The administrative conclusion was that Velez is not disabled because she has a residual functional capacity for medium work, limited to simple, repetitive tasks, which allowed for the performance of Velez' past relevant work as an industrial cleaner (Tr. 17-18).

Velez does not contest the finding that she is physically capable of medium exertion, but she challenges the finding that her mental restrictions were not disabling. Her primary argument is that the Commissioner erred in finding that the report from Dr. Huerta was not supported by the medical evidence or entitled to controlling weight.[1] Dr. Huerta had reported on January 3, 2008, that Velez had "poor" abilities for dealing with the public, dealing with work stresses, functioning independently, and maintaining attention and concentration (Tr. 386). The doctor elaborated that Velez had great difficulty with recent memory, concentration and staying on task (*Id.*). In his opinion, Velez would have only fair ability to remember and carry out simple job instructions due to major depressive disorder with symptoms of anxiety and sadness, crying spells, lack of interest, low energy and inability to enjoy life (Tr. 386-87). Dr. Huerta believed that Velez needed additional stabilization to be able to engage in a work-related activity, and further that depression and anxiety limited her ability to perform any job requiring full use of cognitive functions (Tr. 387).

---

[1] The Commissioner does not contest that Dr. Huerta qualifies as a "treating source" as defined under 20 C.F.R. §§404.1502 and 416.902, or that there was a "treatment relationship" for purposes of §§404.1527(d)(2) and 416.927(d)(2).

3

The ALJ discounted Dr. Huerta's opinion as follows:

> As for opinion evidence, the undersigned has carefully considered the opinion of the claimant's psychiatrist at Exhibit 15F describing the claimant's limitations with regard to working. This opinion is afforded some weight, but the undersigned notes that the claimant's counseling records do not describe functional limitations consistent with these limitations. Moreover the claimant has successfully worked in the past and has admitted that her symptoms have improved with treatment. Considering the nature of claimant's symptoms, precipitating and aggravating factors, treatment including medication, the claimant's functional restrictions and her daily activities, the undersigned concludes that the claimant retains the residual functional capacity set forth above. (Tr. 17-18).

*Standard of Review:*

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson v. Perales*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270,  273(6th Cir. 1997); and see

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work."). "At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the

Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*I. The ALJ's consideration of Dr. Huerta's opinion:*

In determining the question of substantiality of the evidence, reports of physicians who have treated the applicant over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2); 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the treating physician rule. See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). When the ALJ does not give the opinion from a treating physician controlling weight because it is unsupported or inconsistent with other substantial evidence, then the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole, and; (5) the specialization of the treating source, as mandated under 20 C.F.R. § 404.1527(d) and §416.927(d). See *Bowen v. Commissioner of Social Sec.,* 478 F.3d 742, 747 (6th Cir.

6

2007)(citing *Wilson*, 378 F.3d at 544). Consistency and supportability are key. Consistency is simply comparison "with the record as a whole." 20 C.F.R. §404.1527(d)(4) & §416.927(d)(4). Under supportability the ALJ considers the medical signs and laboratory findings and "[t]he better an explanation a source provides for an opinion, the more weight" it is given. 20 C.F.R. §404.1527(d)(3) & §416.927(d)(3). Supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

The ALJ began his analysis commenting that Velez had been referred to the Nord Psychiatric Center in the Autumn of 2004 for complaints of depression related to her eldest son's leaving to serve in the Armed Forced in Iraq (Tr. 13). The ALJ placed particular emphasis on the October 27, 2005-consultative psychological report from Dr. David House. (Tr. 14, 16). Using clinical interview, Dr. House found depressive disorder, not otherwise specified, and panic disorder with agoraphobia associated with some obsessive-compulsive features and bereavement. (Tr. 262-63). With respect to functional capacity, Dr. House found mild to moderate reduction in ability to concentrate and maintain attention, inability to perform more than three or four step processes due to interruptions in concentration, moderately limited ability to relate to others and deal with the general public, and at least moderate limitation to withstand stress and pressure due to features of depression and anxiety (Tr. 263). Velez' adaptability was rated as mildly to moderately limited and judgement was

7

found to be mildly impaired. (*Id.*). Dr. House concluded that "Velez had serious reductions in work and social skills" (Tr. 264).

The ALJ also summarized his review of the medical records concerning Velez' mental health treatment from 2004 through January 2008 and Dr. Huerta's opinion of poor ability to understand and carry out complex instruction and poor ability to deal with the public, work stresses, function independently and maintain attention and concentration (Tr. 14, 386-87). Finally, as quoted previously, the ALJ discounted Dr. Huerta's opinion for the reasons that "claimant's counseling records do not describe functional limitations consistent with these limitations . . . [and] the claimant has successfully worked in the past and has admitted that her symptoms have improved with treatment" (Tr. 18).

*Inconsistency with Counseling Records:*

The first reason given by the ALJ to reject Dr. Huerta's opinion was that the counseling records did not describe functional limitations consistent with his conclusions (Tr. 18). Essentially, Dr. House found that Velez could follow job directions of up to three to four steps (Tr. 263), whereas Dr. Huerta found only fair ability to perform simple job instructions, and poor ability to perform complex job duties (Tr. 386).

Velez refers to Nord Center treatment notes to support her position that the ALJ lacked substantial evidence to discount Dr. Huerta's opinion (See Tr. 248-49, 253, 315, 318, 332, 337, 338,

8

343 and 373). [2] These notes indicate that Velez did not like "food, typing" and was seeking employment on her own (Tr. 249). She was working with a vocational specialist, Amie Gonzelez, and referred for clerical training, but did not think she could do it and preferred training for a job where she could be more active (Tr. 253-54). Velez was interested in food services training(Tr. 253-54).

On September 5, 2005, Velez cancelled an appointment due to another commitment and cancelled another appointment on October 19, 2007 due to car problems (Tr. 315, 332). Her October 26, 2007 progress notes indicated that she "reported some psychiatric stability" and "feels unable to work due to emotional condition," and "[e]ncouraged to consider some part time employment" (Tr. 331). Her prior Individual Service Plan dated November 30, 2006, set a target date of November 30, 2007, and stated that Velez received financial help from her 19 year old son and ex-husband and had "good support from friends"(Tr. 336-38). At the September 29, 2006 counseling session, Velez reportedly was no longer worried all the time about her youngest son in the army, and there was a comment about her older son in Iraq (Tr. 343). Reportedly Velez was using adequate judgment (Tr. 343). The June 2007 progress notes and six-month review reported that Velez was taking her medications and had kept her appointments "with good results" (Tr. 374). Blunted affect with mildly depressed mood and moderate anxiety was noted (Tr. 373). Under the topic of current functioning, Velez reportedly was able to maintain her symptoms under control with the use of psychotropics, but there had been "bouts of depression usually related to having two sons

---

[2] Velez inconsistently refers to the medical record using at times the page number and at other times the electronic page number appearing in the ECF transcript.

9

in the army and her inability to return to work due to her emotional condition. Awaiting for SSI approval" (Tr. 375).

Velez then goes on to argue that by August 2005 the vocational staff at Nord Center agreed that she was unable to continue with the program due to her inability to cope with stress. Actually, this record states that "she had too many problems with her son and had to make sure that issue was handled before she could concentrate on working" (Tr. 245). The June 2005 progress notes (which Velez mistakenly references in her brief as the August notes) explained that a week before high school graduation her son was caught smoking marijuana and now had "legal problems" where Velez was helping him with court appearances (Tr. 249). Velez next refers to November 2005 instruction for her to engage in "two meaningful activities per week"as showing a decline in her level of functioning (Tr. 305). However, the other cited reports for prior years concededly also included this same instruction (Tr. 327,335). So, how repetition of this same instruction over time indicates a decline in Velez's mental health is unfathomable.

Finally, Velez contends that Dr. Huerta reported that the symptoms included anxiety, sadness, crying spells, poor appetite, sleep difficulty, with problems in recent memory and staying on task, referring to pages 390 and 391 of the record. A report from a physical therapist appears on the pages identified. Presuming that Velez intended to refer to pages 341 and 342, which are electronically identified as pages 390 and 391, then this refers to a report of a rescheduled visit, and another report of "sleep and appetite OK"  The counseling records Velez has guided the court to review are indeed inconsistent with Dr. Huerta's conclusions and inconsistent with Velez'

10

arguments. Dr. Huerta's opinion lacked consistency and supportability. See 20 C.F.R. §404.1527(d)(3)-(4) and §416.927(d)(3)-(4).

*Past Work and Admitted Improvement:*

The ALJ also based his determination on the facts that Velez had worked in the past and had admitted improvement (Tr. 18). Evidence of improvement does appear in Velez' counseling records (Tr. 345). Velez alleged that her disability commenced on October 1, 2004, but she had been bothered by her condition since 1999 (Tr. 138). Despite this, she had worked from March 2001 to October 2004 for 10 hour days, 5 days each week at a factory job (Tr. 139). Accordingly, contrary to Velez' argument the ALJ's analysis provided good reasons for discounting the opinion from Dr. Huerta , and the ALJ did have substantial evidence to discount Dr. Huerta's opinion.

Additionally, Velez alludes to the six factors from 20 C.F.R. § 404.1527(d) and §416.927(d). of : (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole, and; (5) the specialization of the treating source. The ALJ's summarization of the medical evidence shows consideration of the length of the treatment relationship and the nature and extent of the treatment relationship. The ALJ further noted that Dr. Huerta was a psychiatrist and the ALJ most clearly delved into the supportability of Dr. Huerta's opinion and the inconsistency of the opinion with the record as a whole. Thus, this is not a situation where, "[a]n agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional

11

right to due process." *Wilson*, 378 F.3d at 545(quoting *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)). There was an adequate discussion of the mandated factors for consideration under the governing regulations so not only was the rejection of Dr. Huerta's opinion supported by substantial evidence, but also the ALJ applied the correct legal standards.

*II. Sustainability:*

Velez , though, is correct in her argument that the Nord Center records do not support the finding that she can perform sustained activity for 40 hours per week. The ALJ did not address this issue nor does the Commissioner defend on this point. The question of sustainability is a key feature to the ability to perform substantial gainful activity:

> Residual functional capacity is defined as the `maximum degree to which the individual retains the capacity for <u>sustained</u> performance of the physical-mental requirements of jobs.' 20 C.F.R. pt. 404, Subpt. P, App. 2 §200.00(c) (1989) (emphasis added). In determining a claimant's physical abilities, we must assess the severity of [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a *regular and continuing basis*. 20 C.F.R. §404.1545(b) (1989) (emphasis added).

*Cohen v. Secretary*, 964 F.2d 524, 530 (6th Cir. 1992).

While this issue was not addressed, the record does support the ALJ's conclusion that Velez can perform (hence sustain) medium exertion restricted to simple, repetitive tasks. (Tr. 17). The consultative examiner for the state agency, Dr. House, concluded that there was at least moderate limitation in withstanding stress and pressures (Tr. 263). Dr. House's findings were incorporated into a mental residual functional capacity assessment by state agency physicians (Tr. 277-292). This assessment indicated in Section I, a moderate limitation in completing a normal work week (Tr. 291).

12

The Section III assessment was that Velez could perform work "not involving complex, detailed tasks. She is able to perform work not involving high levels of stress" (Tr. 292).

The Social Security Administration's Program Operations Manual System (POMS) Section DI 24510.064 regarding the completion of Section I states the box labeled "moderately limited" should be checked when the "evidence supports the conclusion that the individual's capacity to perform the activity is impaired. [3] The degree and extent of the capacity or limitation must be described in narrative format in Section III." In general, the decisions have respected the Commissioner's argument the ALJ is not required to include the findings in Section I in formulating residual functional capacity. See *Liggett v. Astrue*, 2009 WL 189934, *7-8 (E.D. Pa.); *Berry v. Astrue*, 2009 WL 50072, *15 (W.D.Va.); *Norris v. Astrue*, 2008 WL 4911794, *16 (E.D.N.C.); *Malueg v. Astrue*, 2007 WL 5480523 (W.D. Wis). POMS DI 24510.060 and DI 24510.060B4 state that "Section III Functional Capacity Assessment, is for recording the mental RFC [residual functional capacity] determination. It is under Section III where "the actual mental RFC assessment is recorded . . ." See POMS DI 24520.060(B)(2). Accordingly, the record in particular the mental residual functional capacity assessment from the state agency physicians supports the finding that Velez can perform medium exertion for simple, repetitive tasks under the implicit assumption that such work can be sustained.

*III. Credibility:*

---

[3] The POMS is the operational reference used by SSA staff to conduct SSA's daily business. "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . ." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003). The POMS is available at http://www.ssa.gov/regulations/index.htm.

13

Velez argues that the ALJ in finding her testimony not credible stated that she had not reported to her doctor that she stayed in bed all day for 2 to 3 times a week ( Tr. 17). To be more correct, the ALJ actually stated that such severe symptoms were not reported to her counselor or her treating psychiatrist (Tr. 17). The ALJ was correct.  Velez has confused the medical records with a report from a paralegal at her attorney's office. Apparently she did indeed tell the paralegal that she stayed in bed at least 3 days each week (Tr. 166, electronic page 170). However, the medical record which Velez refers to only stated that she "sometimes" stayed in bed all day, or that "she spends most of her time in bed" (Tr. 151, 262, electronic pages 155, 266).  Obviously, the statements in the medical record do not match, and Velez has not shown that the ALJ lacked substantial evidence.

*IV. ALJ's Reliance on his own Interpretation of the Medical Evidence:*

Velez argues that the ALJ did not credit any medical opinion of record and she argues that the ALJ relied upon his own interpretation of the evidence. The ALJ acknowledged that there were reports from Social Security Administration medical consultants (Tr. 15), but he did not make specific reference to the mental residual functional capacity assessment from the state agency psychiatrist and psychologist (Tr. 277-293). Nevertheless, the ALJ's conclusions that Velez is limited to the performance of simple, repetitive work and remains capable of performing her past relevant work as an industrial cleaner is  consistent with the Section III functional capacity assessment conclusion from the state agency physicians that Velez can carry out job instructions not involving complex, detailed tasks and she is able to perform work not involving high levels of stress (Tr. 292). The ALJ did not address stress.  But since the job of industrial cleaner was Velez' past relevant work (See Tr. 54-55), the burden remained upon her to show that she could not perform this job (and aside

14

from the permissibly and properly discounted opinion from Dr. Huerta), Velez offers nothing to demonstrate an inability to return to her past relevant work as an industrial cleaner.[4]  See *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987).

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying Social Security disability insurance benefits and supplemental security insurance benefits is supported by substantial evidence and should be affirmed.

s/James S. Gallas<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

[4] For example in *Southerland v. Astrue*, 2010 WL 333673, at *4 (S.D. Ohio), *Priel v. Astrue*, 2010 WL 184329, at *3 (W.D. N.Y.), *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, at *7 (E.D. Mich.), and *Harris v. Astrue*, 2008 WL 5517087, at * 3 (E.D. N.Y.),  the courts noted that vocational experts had testified that the job of industrial cleaner constituted low stress work with no production quotas, or simple, repetitive low-stress work.